(No. 54460.—)

SPRINGFIELD METROPOLITAN EXPOSITION AND AUDITORIUM AUTHORITY, Appellee, v. JOHN W. CASTLE, Director of Business and Economic Development, Appellant.

*Opinion filed September 30, 1981.*

Tyrone C. Fahner, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of counsel), for appellant.

Thomas W. Kelty, of Pfeifer & Kelty, P.C., of Springfield, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The plaintiff, Springfield Metropolitan Exposition and Auditorium Authority (the Authority), filed a complaint seeking injunctive and declaratory relief in the circuit court of Sangamon County. The complaint sought to prevent the defendant, as Director of the Department of Business and Economic Development (the Department), from enforcing one provision of an agreement entered into by the plaintiff and defendant. It was alleged that the provision contravened section 4 of the Metropolitan Civic Center Support Act (Support Act) (Ill. Rev. Stat. 1977, ch. 85, par. 1394). After amendments to the pleadings were filed, both parties filed motions for summary judgment. The parties also entered into a stipulation of facts. After argument was heard, the trial court denied plaintiff's motion and granted defendant's motion. The court entered a detailed order which provided in part:

"3. Ill. Rev. Stat. ch. 85, par. 1394 (1977) is silent as regards interest income derived from the investment of bond proceeds;

4. Section 1(b)(8) of the agreement entered into between the parties does not exceed the statutory authority conferred upon defendant by Ill. Rev. Stat. ch. 85, par. 1394 (1977) and is not void *ab initio*;

5. Section 1(b)(8) of the agreement entered into between the parties is severable from the balance of the agreement;

6. The interest funds being sought by the plaintiff are currently available from the office building fund created by Ill. Rev. Stat. ch. 85, par. 1393 (1977);

7. The plaintiff was not operating under economic duress when it entered into the agreement with the defendant."

The plaintiff appealed. The Appellate Court for the Fourth District unanimously reversed. (90 Ill. App. 3d 710.) We thereafter allowed the Department's petition for leave to appeal (73 Ill. 2d R. 315). We affirm.

The facts are ably set forth in the appellate court's opinion. In summary, the stipulation of the parties and the exhibits attached thereto reveal that the Authority was established for the express purpose of building an auditorium and exposition center in the city of Springfield. After complying with the statutory and regulatory formalities, the Department and the Authority entered into an agreement on January 7, 1977, whereby the Authority agreed to issue bonds, the proceeds of which would be used to construct the center. Until they were disbursed, the bond proceeds were deposited into an interest-bearing bank account known as the Construction Fund. The Department, for its part, agreed, pursuant to section 4 of the Support Act (Ill. Rev. Stat. 1977, ch. 85, par. 1394), to retire 75% of the debt service on the bonds, including principal and interest. At the time of entry into the agreement, and after a considerable amount of debate, a provision was included which allowed the State to credit interest earned on 75% of the bond proceeds in the Construction Fund to the debt service. Section 1(b)(8) of the agreement provides:

"The Authority:

* * *

(8) Agrees that interest earned on an accrual basis upon bond proceeds supported by State Support Payments shall be credited to the Department annually in the form of a set-off from the request to the Department for State Support Payments for that fiscal year, said calculation to be made by the certified public accountants employed by the Authority and accepted and approved by the Department."

The Authority strenuously objected to this provision but, due to time pressures, acquiesced to its inclusion in the agreement. Subsequently, in notifying the Department of

each credit, counsel for the Authority sent a letter formally protesting crediting the Department with any interest accrued in the Construction Fund. Eventually, the Authority filed this action seeking to have the contractual provision declared illegal and void *ab initio*, and to enjoin the Department from enforcing it.

The issue thus presented is whether section 1(b)(8) of the agreement is a void provision. We think it is.

Section 3 of the Support Act (Ill. Rev. Stat. 1977, ch. 85, par. 1393) provides that a fund is to be created in the State Treasury from tax revenues collected under section 28 of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1977, ch. 8, par. 37—28). Section 4 of the Support Act provides that "[m]oneys will be committed and distributed *from the Fund* to Authorities ***." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 85, par. 1394.) Finally, section 4(3)(c) of the Act specifies that "the State shall enter into an agreement with the Authority whereby the State will agree subject to annual appropriation by the General Assembly to pay annually to the Authority *from the Fund*, (1) an amount equal to the interest and principal cost to the Authority of amortizing revenue bonds issued by the Authority in an amount equal to the base sum [*i.e.*, the State's support payments]" (emphasis added) (Ill. Rev. Stat. 1977, ch. 85, par. 1394(3)(c)). Therefore, the unequivocal intent of the General Assembly is that the fund is to be the source of the State's support payments. The Support Act does not expressly state that the fund must be the exclusive source of the State's support payments. A specific fund has been established using one source of tax revenue for the purpose of building exposition centers, auditoriums and office buildings. No provision is made for funding other than through that one source. It is only logical to conclude therefore that the General Assembly did not foresee or anticipate that the Department would attempt to credit interest earned on bond proceeds in order to retire its share of the debt service. Thus, it is true, as the

Department argues, that there is no express provision prohibiting the State from obtaining the support payments from a source other than the Metropolitan Exposition, Auditorium and Office Building Fund. Any other source of support payments, however, must properly belong to the Department and must be clearly intended to be used for that purpose. The bond proceeds which are placed in the Construction Fund herein cannot actually be said to be attributable to the State. The Authority issues the bonds and incurs an obligation to pay them. The official statement distributed by the Authority to prospective purchasers of the bonds provides:

> *"The Bonds are limited obligations of the Authority payable solely from the sources pledged for their payment. The Bonds do not constitute an indebtedness or obligation of the State of Illinois, or of any other political subdivision of or municipality within the State of Illinois, nor are the Bonds a general obligation of the Authority."* (Emphasis in original.)

Moreover, section 2 of "An Act relating to certain investments of public funds \* \* \*" (Ill. Rev. Stat. 1977, ch. 85, par. 902) provides in pertinent part:

> "All earnings accruing on any investments or deposits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund."

Therefore, we conclude that, first, the Support Act provides that support payments "will," but need not in every case, come from the Metropolitan Fund which is funded by horse-racing-tax revenues; second, the interest accrued on the bond proceeds deposited in the Construction Fund is created by bond proceeds which are an obligation of the Authority, not the Department, are intended to be used for construction costs, and must be credited to the Authority. Hence, the Department is not entitled to

credit the interest to its share of the support payments. Section 1(b)(8) of the agreement is invalid and unenforceable.

We do not agree with the Department that invalidating section 1(b)(8) will cause the Authority to delay making disbursements out of the Construction Fund in order to accrue additional interest. We think the following covenant made by the Authority in its agreement with the Department adequately protects the interests of bondholders:

"The Authority:

\* \* \*

(7) Agrees that it will exercise its best efforts and will diligently attempt to expend the proceeds of Bonds within 30 months from the date that Bonds are delivered to the purchasers thereof and in the event that Bond proceeds and investment earnings thereon are not expended on or before January 1, 1980, except for delays in completion of the Project resulting from acts of God or other unavoidable casualties, the Authority, upon written request of the Department shall consult with the Department in order to remedy any failure in meeting the Project Construction Completion Date, and agree that the Department may require the Authority to retain the services of an independent consultant mutually agreed upon, to advise the Authority as to remedial actions required to complete the Project: \* \* \*."

And, of course, creditors of the Authority are entitled to seek legal recourse if payments out of the Construction Fund are not timely. Thus we do not see how delay will automatically occur due to the invalidation of section 1(b)(8).

Due to our invalidation of section 1(b)(8), we need not, and do not, reach the second contention raised by the Authority—that it was forced to include that section due to acts of "business compulsion" perpetrated by the Department.

It is not a matter of record whether the exposition center has been completed. We will remand this cause to the trial court to determine whether there is any legitimate need for the Authority to receive the interest monies. On the one hand, if the exposition center is fully constructed, the court may decide that there is no valid or necessary use for which the monies need be paid to the Authority. On the other hand, if the Authority can establish a valid or necessary use for the monies, then the court may order the Department to pay the monies to the Authority.

Accordingly, for the reasons stated, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Affirmed and remanded.*